**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| CARREN S. COHEN-HARVIN, | : | |
| | : | Bky. No. 17-11252 ELF |
| Debtor. | : | |
| | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

In this chapter 13 bankruptcy case, Debtor Carren Cohen-Harvin ("the Debtor") has filed a chapter 13 plan in which she proposes to pay off the entire residential mortgage claim of Bank of America ("BOA") pursuant to 11 U.S.C. §1325(a) – (rather than curing the default under §1322(b)(5), as is far more common in chapter 13 cases involving residential mortgages).  The Debtor's approach is not surprising because the subject mortgage matured and was reduced to judgment in state court before the commencement of the bankruptcy case.

Presently before the court is Debtor's Objection to BOA's Proof of Claim ("the Objection").

BOA filed a proof of claim in the amount of $47,189.43 (Claim No. 2-1).  The Debtor invokes the Pennsylvania state law doctrine of merger and asserts the claim should disallowed, in part, because certain charges included in the claim are unenforceable under applicable state law.  The Debtor asserts that the allowed claim should be only $40,869.25.

For the reasons stated below, the Objection will be sustained in part and denied in part.  BOA's claim will be allowed in the amount of $43,329.31.

1

## II. PROCEDURAL AND FACTUAL HISTORY

On April 19, 1999, the Debtor entered a residential mortgage loan transaction with Full Spectrum Lending. The loan was secured by her primary residence. The interest rate under the associated note was 12%. This mortgage and note were eventually assigned to BOA.

On December 6, 2016, on the basis of that mortgage and note, BOA obtained a default foreclosure judgment against the Debtor for $39,847.41.

The Debtor filed this chapter 13 bankruptcy on February 22, 2017.

On June 1, 2017, Bank of America filed a secured proof of claim in the amount of $47,189.43. BOA calculated its claim from the Debtor's payment history, and included late fees, attorney fees and court and title costs which were accrued both before and after the judgment. In effect, BOA calculated its claim as if no judgment had been entered and the proof of claim does not differentiate between charges assessed before the entry of the judgment from those assessed after the entry of judgment.[1]

---

[1]   BOA calculated its $47,189.43 claim as follows:

| | |
|---|---|
| Principal Balance | $13,094.86 |
| Interest | $3,915.71 |
| Late Charge | $189.00 |
| Attorney Cost | $700.00 |
| Court Costs | $2,084.00 |
| FC Costs | $85.00 |
| BK Costs | $682.50 |
| Title Cost | $750.00 |
| Property Inspection | $423.50 |
| Appraisal | $915.00 |
| Attorney Cost | $1,410.00 |
| Filing Cost | $676.96 |
| Sheriff Cost | $1,500.00 |
| Escrow Deficiency | $26,605.91 |
| Unapplied | ($5,843.01) |

(See POC 2-1, Ex. A1).

The Debtor filed the Objection on June 8, 2017. A hearing on the Objection was held on July 25, 2017. At the hearing, the parties presented additional argument, but did not offer any evidence aside from the note, mortgage, BOA's Proof of Claim and the foreclosure case docket.

### III. DISCUSSION

#### A. Introduction

A proof of claim filed in compliance with the Bankruptcy Rules is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). If an objection is made, the court shall disallow any portion of a claim which is "unenforceable against the debtor and property of the debtor's estate under any agreement or applicable law . . . . " 11 U.S.C. §502(b)(1).

In this dispute, the applicable nonbankruptcy law is Pennsylvania law, with the issue being the appropriate methodology for measuring the total balance due on BOA's claim against the Debtor.

As stated above, in its proof of claim, BOA calculated its claim as if no judgment had been entered. The parties' dispute is triggered by the undisputed fact that BOA obtained a judgment against Debtor prior to the commencement of this bankruptcy case.

The Debtor asserts that BOA's claim is limited to the amount of the judgment entered ($39,847.41), plus the interest that accrued on the judgment in the seventy-eight (78) days between its entry on December 6, 2016 and the filing of her bankruptcy petition on February 22, 2017. The Debtor further argues that, to the extent any charges claimed by BOA did not merge into the judgment, BOA failed to make a sufficient factual showing of its entitlement to reimbursement of those charges.

BOA argues that the Debtor's contractual obligation to reimburse BOA for the charges claimed in its proof of claim remained in force after the entry of judgment and that, in its proof of claim, it properly asserted its entitlement to payment for those charges.

### B.  The Merger Doctrine and Reassessment of Damages

**1.**

The starting point in analyzing the parties' dispute is Lance v. Mann, 60 A.2d 35 (Pa. 1948), the case in which the Pennsylvania Supreme Court articulated what is known as the merger doctrine:

> [A] judgment settles everything involved in the right to recover, not only all matters that were raised, but those which might have been raised.  The cause of action is merged in the judgment which then evidences a new obligation.

Id. at 36 (citations omitted).

Upon entry of a foreclosure judgment "the terms of a mortgage [and note] are merged into a foreclosure judgment and thereafter no longer provide the basis for determining the obligations of the parties."  In re Stendardo, 991 F.2d 1089, 1094–95 (3d Cir. 1993).  Generally, the right to collect any pre-judgment amounts which could have been included in the judgment, and the right to collect any post-judgment charges provided for by the note and mortgage are extinguished.

There is one key exception to the merger doctrine – it can be contracted around.  A provision in the note or mortgage survives merger if it "clearly evidences [the parties'] intent to preserve the effectiveness of that provision post-judgment."  Stendardo, 991 F.2d at 1095.

An aspect of Pennsylvania legal procedure that intersects with the merger doctrine is the common practice in Pennsylvania mortgage foreclosure cases of "reassessing damages."

4

Reassessment of damages is accomplished through the filing of a post-judgment motion in which the plaintiff requests that the court modify the foreclosure judgment to incorporate certain charges incurred and interest accruing post-judgment. When granted, it results in a revised judgment with an increased monetary amount that is entered on the docket before the foreclosed property is subjected to sheriff's sale or is satisfied by payment  Other than accrued interest, the amounts that a creditor typically will seek to add to the judgment are those charges or expenses incurred which the underlying mortgage permits the creditor to assess against the borrower as part of the debt – e.g., advances made by the creditor for real estate taxes and property insurance or additional attorney's fees incurred. Because the charges arose after the entry of judgment, and could not have been included in the judgment at the time it was entered, reassessment permits the record judgment to reflect the full amount of the indebtedness – assuming that the right to assess those charges against the borrower survived the entry of judgment pursuant to the contractual exception to the merger doctrine.

There are practical reasons why a foreclosing creditor desires to reassess damages. For example, a borrower might tender the payment necessary to satisfy the judgment for an amount less than that which the creditor might have been entitled to collect had the creditor reassessed damages before the tender. See, e.g., Nationsbanc Mortg. Corp. v. Grillo, 827 A.2d 489, 493 (Pa. Super. Ct. 2003) (creditor's refusal to accept tender of judgment amount justified setting aside subsequent sheriff's sale); Chase Home Mortg. Corp. of the Southeast v. Good, 537 A.2d 22, 24 (Pa. Super. Ct. 1988) (payment of record judgment amount precludes subsequent request to reassess damages on the judgment).[2]

The reassessment process has both procedural and substantive elements.

---

[2] An understated judgment also reduces the judgment creditor's credit bidding power if there is actual bidding at the sheriff's sale.

Procedurally, the reassessment process must honor basic elements of due process – notice and an opportunity to be heard – before a court may alter a judgment to the detriment of the judgment debtor.  See EMC Mortg., LLC v. Biddle, 114 A.3d 1057, 1072 (Pa. Super. Ct. 2015) (factual disputes mandate an evidentiary hearing on a motion to reassess damages); see also Union Nat. Bank of Pittsburgh v. Ciongoli, 595 A.2d 179, 182 (Pa. Super. Ct. 1991) (alleged local custom by which plaintiff unilaterally can increase judgment amount by letter or affidavit "cannot be condoned").

More substantively, in light of the merger doctrine, the trial court may reassess damages after the entry of judgment only to the extent that a contractual exception to the merger of the mortgage and the judgment.  The Superior Court's decision in Biddle illustrates this point.

Biddle involved an appeal from an order permitting the judgment creditor to reassess damages over the objection of the judgment debtor.  To determine the permissible scope of the requested reassessment, the court examined the parties' contract (the mortgage) for purposes of deciding whether the contractual exception to the merger doctrine was applicable.

The court focused on the paragraph of the mortgage providing that the creditor could foreclose by judicial proceeding after default and "collect all expenses incurred in pursuing [the foreclosure remedy] including, but not limited to, attorneys' fees and costs of title evidence."  Based on this provision, the court held that the parties agreed that the creditor was entitled to supplement its judgment and recover attorney's fees and costs of title evidence incurred in executing on its judgment, 114 A.3d at 1068, 1069.  The court also held that the creditor was entitled to augment its judgment with interest at the contract rate based on a separate provision of the mortgage.  Id. at 1068 n.7.  However, the mortgage did not authorize augmentation of the judgment for late charges, property inspections, mortgage insurance premiums and escrow

6

deficits: "[a]lthough the mortgage permitted EMC to recover these sums from Appellant or, alternatively, to make these expenditures on his behalf . . . the agreement did not expressly provide that collection of these sums or outlays for these items survived the default judgment." Id. at 1068. Therefore, those expenditures could be not included in the reassessment unless the creditor demonstrated "how its pursuit of a foreclosure remedy necessitated those outlays." Id.

**2.**

The above discussion illustrates that the propriety of reassessing damages is well established by intermediate appellate case law in Pennsylvania. See, e.g., Biddle, 114 A.3d 1064; Grillo, 827 A.2d at 493; Ciongoli, 595 A.2d at 182. The power to reassess is grounded in the inherent authority of the Pennsylvania trial courts to amend their own orders and control the enforcement of judgments that they enter. PNC Bank, N.A. v. Unknown Heirs, 929 A.2d 219, 227 & n.3 (Pa. Super. Ct. 2007); accord Biddle, 114 A.3d at 1064. From a policy perspective, the reassessment process appears to be a rational means to effectuate the exception to the merger doctrine in which certain contractual charges accruing after the entry of judgment may augment the judgment debtor's liability.[3]

Focusing on the reasoning that the authority to reassess damages is based on a court's inherent control over its own judgments, at argument, the Debtor questioned the authority of a bankruptcy court to permit a creditor to seek allowance of a claim that includes post-judgment expenditures, even though the charges survive merger and could be the basis for a reassessment

---

[3] At argument, BOA asserted reassessment through the exception to the merger doctrine applies to charges omitted from the foreclosure judgment that arose prior to the entry of the judgment and even prior to the filing of the foreclosure complaint. This is incorrect. See Biddle, at 1069 & n.8.

7

of damages by the state trial court. The Debtor argued that the reassessment power resides only with the state trial court and that the allowance of additional creditor expenses constitutes an impermissible federal court modification of a state court judgment. See generally In re Mahovic, 2014 WL 4345962, at * (Bankr. W.D. Pa. Aug. 28, 2014).

There is some authority in this jurisdiction arguably supporting the Debtor's position. See In re Brooks, 2008 WL 2993948, at *3 n.3 (Bankr. E.D. Pa. July 31, 2008) (creditor's argument that the bankruptcy court "can alter or amend the State Court Judgment per Pennsylvania Rule of Civil Procedure 3118(a) is incorrect"). There is also contrary authority directly on point. See In re Rorie, 98 B.R. 215, 220 (Bankr. E.D. Pa. 1989) (holding that bankruptcy courts may reassess a foreclosure judgment amount when reassessment is permissible under state law as part of the claims allowance process).

I agree with and will follow Rorie. The bankruptcy court is not modifying a state court judgment by allowing a claim that includes amounts that could be added to a state court judgment through reassessment. That the amount of the allowed claim differs from the state court judgment does not raise comity or federalism concerns. By allowing the claim in an amount in excess of the judgment based on post-judgment events, the bankruptcy court is not impermissibly modifying the state court judgment. Rather, the court is merely using the state court judgment as a starting point to determine the amount of the claim under applicable nonbankruptcy law and allowing the claim in the same amount that the state court would as part of the reassessment process. The result is entirely consistent with the requirements and purposes of 11 U.S.C. §502(b). If the claim is valid under state law and would be recognized and accepted by the state trial court, the claim is equally valid as a claim in the bankruptcy court.

### C.  Determination of BOA's Allowed Secured Claim

**1.**

Following entry of the judgment, Bank of America's rights under the note and mortgage ceased to exist, according to the merger doctrine.  The Debtor concedes that the subject mortgage included an exception to merger for interest at the twelve percent (12%) contract rate.  The Debtor concedes that the interest that accrued from the entry of the state court judgment through the date the bankruptcy case was filed totaled $1,021.84 and should be added to the $39,847.41 judgment, resulting in allowed secured claim of $40,869.25.

The Debtor disputes that any other charges under the mortgage survived merger.  These charges include attorney's fees and costs, court costs, title costs, property inspection, appraisal, sheriff's costs and escrow deficiency.  See n.1, supra.[4]

**2.**

An initial difficulty in analyzing the dispute arises from BOA's calculation of its claim as if no judgment had been entered, i.e., its failure to calculate its claim with the judgment as the starting point.  Thus, from BOA's itemization of the components of its claim, as set forth in its proof of claim, it is impossible to distinguish those expenses that were incurred pre-judgment and that were (or should have been) included in the judgment from those expenses arising post-judgment that arguably survived the merger of the mortgage into the judgment.

---

[4]  BOA's itemization of costs also included $189.00 in late charges.  At oral argument, BOA conceded that late charges assessed against a matured mortgage are impermissible and should be disallowed.

If the itemization attached to the proof of claim were the sum total of the record, arguably, all of the additions to the judgment could be disallowed based on BOA's failure to satisfy its burden of proof.  See Brooks, at *2.  However, the record includes a payment history, which identifies those charges assessed after the entry of the state court judgment on December 6, 2016.  Those charges (with the omission of the late charges) are:

| | |
|---|---:|
| Tax bill disbursement | 286.54 |
| Tax bill disbursement | 299.34 |
| Insurance premium | 199.42 |
| Attorney cost | 470.00 |
| Sheriff cost | 1,500.00 |
| Appraisal | 490.00 |
| Property inspection | 13.00 |
| Title cost | 125.00 |
| Tax bill disbursement | 299.33 |
| Insurance premium | 1,041.97 |
| **TOTAL** | **$4,724.60** [5] |

The charges listed above may be placed into four (4) categories: (1) attorney's fees; (2) court and title costs; (3) escrow advances (taxes and insurance) and (4) other (appraisal).  I will consider the allowability of each category as if BOA were requesting a reassessment of its judgment.

**3.**

---

[5]     The difference between the judgment amount ($39,847.41) and the amount claimed by BOA ($47,189.43) is $7,342.01, an amount that is substantially greater than post-judgment charges reflected on the payment history.  Presumably, the difference involves pre-judgment charges omitted from the judgment (plus some late charges).  Whatever the explanation, BOA's request for allowance of such charges fails for lack of proof and the failure to satisfy its burden of persuasion.

10

Paragraph 21 of the subject mortgage (attached to the proof of claim) includes a provision that addresses the exception to the merger doctrine. Paragraph 21, which includes the same language that was analyzed in Biddle, states:

> Acceleration; Remedies. . . . If the default is not cured as specified, **Lender . . . may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to attorneys' fees and costs of title evidence** to the extent permitted by applicable law. (emphasis added).

The Biddle court read the phrase "the remedies provided in this paragraph" – (and note that the word remedies is plural) – to encompass the entire foreclosure process through sheriff's sale and not just to the entry of judgment. Thus, Biddle held that this provision constitutes an agreement that the lender's right to collect attorney's fees, costs and title evidence remains in force after the entry of judgment, notwithstanding the merger of the mortgage into the foreclosure judgment. On this authority, I will allow those charges included in BOA's proof of claim that relate to the process of moving a foreclosure case from judgment to sheriff's sale. In this case, those charges total $2,460.00.[6]

---

[6] Those charges are:

| | |
|---|---:|
| Attorney's fees | 470.00 |
| Sheriff cost | 1,500.00 |
| Appraisal | 490.00 |
| Title cost | 125.00 |

The Debtor made a fallback argument with respect to the attorney's fees as follows: even if an entitlement to post-judgment attorney's fees survives merger into the judgment, BOA failed to support its claim with any evidence that would permit the court to determine the reasonableness of the $470.00 fee.

In some cases the argument advanced by the Debtor might prevail. However, in this case, I infer that BOA exposed the subject property to a sheriff's sale post-judgment (presumably stayed by the bankruptcy filing), I am satisfied that, on its face, a claim for $470.00 in attorney's fees is reasonable. See generally In re Gordon-Brown, 340 B.R. 751, 758–59 (Bankr. E.D. Pa. 2006) (despite absence of lodestar evidence, allowing counsel fees for certain, relatively routine legal services).

One other observation is warranted. In Biddle, the defendant filed a response to the motion to
(cont.)

11

The next category are the escrow charges (taxes and insurance).  Again, I follow <u>Biddle</u>. As that court explained, the mortgage in that case provided the lender with the right to add those escrow advances to the debt, but it was devoid of any express language suggesting that the lender's right to do so survived the entry of judgment.  Thus, those charges would survive judgment only if they were incurred in pursuing the foreclosure remedy.

Similarly, in this case, the mortgage provides only that those charges may be passed on to the borrower as part of the Debtor's' obligation <u>under the mortgage</u>.[7] There is no provision in the mortgage stating that BOA's right to make advances for taxes and insurance and to recover those advances from Debtor survives the entry of judgment.  Nor is there any evidence that those escrow advances are related to the judicial foreclosure process as contemplated by Paragraph 21. Therefore, the charges will not be allowed.

---

(cont.)
reassess denying that the creditor had incurred the alleged costs and the Superior Court accepted the defendant's argument requiring the creditor to produce evidence in support of its reassessment claim for those charges.  114 A.3d at 1069.  At first blush, one might conclude that BOA's claim for the charges here should be disallowed because it, too, produced no evidence verifying the expenditures.  However, that approach does not account for the particular burden shifting rules in proof of claim litigation.

Under Rule 3001(f), BOA's claim is <u>prima facie</u> valid.  In <u>In re Sacko</u>, 394 B.R. 90, 100–01 (Bankr. E.D. Pa. 2008), I held that if the underlying mortgage and note are attached to the proof of claim, Rule 3001(f) is satisfied and that documentation supporting specific charges that the loan documents authorize the lender to assess against the borrower need not be attached to the proof of claim for the claim to retain its <u>prima facie</u> status.  In that situation, the party objecting to the proof of claim has the initial burden of producing evidence that would negate the validity of the charge.  In this case, the Debtor has not produced any evidence, instead relying on the arguments that even if these categories of charges survived the entry of the judgment, BOA had, and did not satisfy, the burden of supporting the claim with additional evidence.  Based on <u>Sacko</u>, I reject the Debtor's argument.

[7] Paragraph 5 of the mortgage authorizes BOA to advance funds for hazard insurance if the borrower has not obtained the requisite coverage.  Paragraph 7 (which is referenced in paragraph 5) more generally authorizes BOA to make any payment to protect its interest in the property.  Paragraph 7 also explicitly provides that any amount advanced "become additional debt" secured by the mortgage.

12

The same reasoning applies to the fourth category: the cost of an appraisal. BOA has not identified any rule of court or other applicable law that requires a lender to appraise a property when subjecting the property to sheriff's sale.[8] That charge, too, will disallowed.

## IV.  CONCLUSION

BOA's claim is allowed to the extent that the claim is based upon BOA's state court foreclosure judgment, plus interest at the contract rate and those post-judgment charges that would be reassessable under state law.

The proper amount of BOA's allowed secured claim is calculated as follows:

| | |
|---|---:|
| Judgment | $39,847.41 |
| Post-judgment interest date of bankruptcy filing | 1,021.84 |
| Attorney's fees and costs | 2,460.00 |
| **Total:** | **$43,329.25** |

An order consistent with this Memorandum will be entered.

Date:  8/7/17

ERIC L. FRANK
CHIEF U.S. BANKRUPTCY JUDGE

---

[8]  By comparison, post-judgment title searches (and the associated costs) have a clear purpose in the foreclosure process.  See Pa. R. Civ. P. 3129.1(b) (requiring notice to all persons with a record interest in the property to be sold).